**MONTGOMERY WARD AND COMPANY, INC., Petitioner,**

v.

**Catherine JOHNSON, and Workers' Compensation Court, Respondents.**

No. 56855.

Court of Appeals of Oklahoma, Division No. 2.

March 16, 1982.

Rehearing Denied April 12, 1982.

Certiorari Denied June 2, 1982.

Released for Publication by Order of Court of Appeals June 4, 1982.

William B. Rogers, Richard A. Resetaritz, Ames, Daugherty, Black, Ashabranner, Rogers & Fowler, Oklahoma City, for petitioner.

Richard A. Bell, Marvin York, Norman, for respondents.

BRIGHTMIRE, Judge.

Claimant, Catherine Johnson, received a workers' compensation award for both physical and mental injuries sustained when she was struck in the face by a falling jewelry display board while working for Montgomery Ward and Company, Inc. The court *en banc* affirmed. The employer appeals complaining about the trial court's finding that an injury to Johnson's nose was accompanied by a partial permanent depressive neurosis amounting to 15 percent to the body as a whole. We affirm.

### I

The employer attacks the psychopathological problem with five different propositions.

Summarized, the employer's arguments are that: (1) an ordinary psychological reaction of an employee to an on-the-job injury is not compensable; (2) non-accident-related, potential contributory causes of a complained of mental abnormality should be heard and considered by the court; (3) in the presence of a preexisting mental problem, the court should determine the degree of injury-related aggravation and compensate only for the latter; (4) the trial judge should have disregarded psychological testimony of a physician who did no "psychiatric evaluation," and who based his medical opinion on an incomplete and inaccurate medical history and on out-of-date psychiatric knowledge.

## II

With regard to its first point the employer refers us to some language in *In Re Loague*, Okl., 450 P.2d 492 (1969), to the effect that "worrying over one's inability to work and earn wages because of being temporarily disabled as a result of an on-the-job injury is a risk 'reasonably incident' to the employment" and not compensable. Also mentioned is a case discussing mental depression of a claimant in the wake of being fired. However that may be, we are not faced with any such situations here. What we have here is a condition one physician said was a "depressive neurosis ... rather severe in nature" resulting from the nose injury. The disorder does not arise merely from unemployment worries or the shock of being fired, but from the pain claimant experiences on the left side of her face and nose coupled with the fact that "she cannot breathe through her left nostril" because of accident-related cartilage displacement, and from the fact of nose deformity. Such posttraumatic neurosis is compensable under the Act.[1]

The employer's second contention—exclusion of nonaccident-related potential causes of the neurosis—surely has to be largely smoke-shoveling because it itself placed in evidence a so-called "psychiatric evaluation" which appears to contain every last shred of embarrassing personal history the psychiatrist could elicit from the hapless victim. Aside from the seeming irrelevance of much of the data, the fact is that the employer did get before the court all the intimate details of what it purports to perceive as nonaccident-related causes of Johnson's mental damage. The trial judge evidently found the employer's medical evidence to be less convincing than that of the claimant. We cannot say he exceeded his fact-finding prerogatives.

Montgomery Ward's third notion—that the court should have specified what degree of mental disability claimant may have possessed before the facial injury—is also without merit.

The short answer to it is that, assuming arguendo such a before and after allocation of mental deficiency is ever warranted, there is no evidence here that the employee had any preexisting psychiatric disability or impairment. True, she may have had a few problems, as do all the rest of us, and apparently she became depressed occasionally, but no physician said she possessed any pre-accident disability or physical impairment as a result.

Finally, the employer says the psychiatric deposition testimony of claimant's physician, a family practitioner, should be ignored because: (1) he admitted he did not "keep current in psychiatry" and that this may explain why he framed his diagnosis—depressive neurosis—in terms no longer recognized in a diagnostic manual prepared by the American Psychiatric Association; and (2) he admitted he did not do a so-called "psychiatric evaluation" of Johnson.

Our first thought concerning these arguments is that the observations would undoubtedly be of considerable interest to someone looking for a specialist in psychiatry. The only effect they could have had in the trial court, however, is with regard to the witness' credibility—an attribute to be appraised by the trier of fact—and here the trial judge found the witness' testimony to be credible.

Secondarily, we can find no evidence that the diagnostic terms in question were in fact not in the latest APA manual. In this connection it is ironic that the criticized nomenclature is used in a work that has lately received widespread acclaim among defending employers—the American Medical Association *Guides to the Evaluation of Permanent Impairment!*[2]

Finally, an upset of the award cannot be founded on the absence of the heralded

---

1. *Wade Lahar Construction Co. v. Howell*, Okl., 376 P.2d 221 (1962).

2. The *Guides*, at page 152, states in part:

"Loss of function due to psychoneurosis is classified in accordance with six major aspects of psychoneurotic reactions ( ... depressive ... )."

"psychiatric evaluation." For one thing, the witness said he did not think such an evaluation would have been helpful. And for another, as we mentioned earlier, the employer did have such an evaluation done and placed the results in the record but offered no connective evidence that it was essential to or even helpful in diagnosing claimant's mental problem.

The trial was free from substantial error and the award is supported by competent evidence. It is sustained.

BOYDSTON, P. J., concurs.

BACON, J., concurs in result.